IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
 : CASE NO. 1:09 CV 0028
TRUSTEES OF THE IBEW LOCAL 38 :
HEALTH AND WELFARE FUNDS, *et al*, :
 :
 : MEMORANDUM OF OPINION AND
 : ORDER DENYING THE DEFENDANT'S
 Plaintiff, : MOTIONS FOR LEAVE TO FILE AND
 : GRANTING THE PLAINTIFFS' MOTION
 -vs- : FOR SUMMARY JUDGMENT
 :
 :
GHL ELECTRICAL MECHANICAL,
INC.,

 Defendant.
------------------------------------------------------
UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before the Court are the plaintiffs' unopposed motion for summary judgment (Doc. 11) and the defendant's motions for leave to file a response to the plaintiff's motion for summary judgment and for leave to file an answer to the plaintiff's amended complaint. (Doc. 16, 17).

The plaintiffs in this case are the trustees of various multi-employer benefit funds,[1] acting pursuant to a collective bargaining agreement between the International Brotherhood of Electrical Workers Local Union No. 38 ("Local 38") and the Greater Cleveland Chapter of the National Electrical Contractors Association, Inc. (Doc. 1, ¶¶2-

---

[1] The funds represented in this case include the IBEW Local 38 Health and Welfare Fund, the IBEW Local 38 Pension and 401(K) Retirement Funds, the National Electrical Benefit Fund, the Cleveland Electrical Joint Apprenticeship and Training Trust Fund, the IBEW Local 38 Vacation/Holiday Fund, and the National Electrical Industry Fund and Cleveland Electrical Contractors Administrative Fund.

7; Doc. 11).  The trustees brought this suit pursuant to Section 301 of the Labor-Management Relations Act and various provisions of the Employee Retirement Income Security Act of 1974 ("ERISA").  They maintain that the defendant GHL Electrical Mechanical, Inc., ("GHL") is a signatory to the agreement and in breach of its terms.  (Doc. 11-1, pp. 2, 7-10).  Specifically, they allege that pursuant to ERISA and the agreement, GHL's failure to make fringe benefit contributions in accordance with the collective bargaining agreement entitles them to delinquency assessments, attorney's fees, and costs.  (Doc. 11-1, pp. 7-10).   For the reasons set forth below, the Court will find that there is no genuine issue of material fact that would prevent judgment as a matter of law in favor of the trustees.

As a preliminary matter, however, the Court will address GHL's motion for leave to file a response to the plaintiffs' motion for summary judgment, and for leave to file an answer to their amended complaint.   (Docs. 16, 17).  The trustees filed an amended complaint on 21 July 2009, which was never answered, and a motion for summary judgment on 30 September 2009, which was never opposed.  (Docs 10, 11).  On 2 December 2009, the Court ordered the parties to provide arguments as to whether the liquidated damages provision of the collective bargaining agreement constituted a penalty under federal common law.  (Doc. 13).  Both parties had done so by 22 December 2009.  (Doc. 14).  Then in late January, four months after the plaintiffs moved for summary judgment and over six months since the filing of the amended complaint, GHL asked the Court for leave to respond and answer.  (Docs. 16, 17).  In support of its motions for leave, GHL's attorney Glenn E. Forbes filed an affidavit in which he swore that he did not become aware of the filing of the plaintiffs' amended complaint and

summary judgment motion until 17 December 2009. (Doc. 18). For this reason he suggests that the Court should grant GHL leave. (Docs. 16, 17).

Mr. Forbes' claim that he did not receive copies of the pleadings and was unaware of their filing does not excuse his failure to respond in a timely fashion. Although he maintains that he did not receive notice of the filings until 17 December 2009, he does not explain why he waited until the end of January to ask the Court for leave. Furthermore, at the case management conference with this Court, Mr. Forbes agreed that electronic filing was suitable in this case. As such, Mr. Forbes has been and remains on notice of the filings pertaining to this case. The defendant's motions for leave will therefore be denied.

### I. Background

The Defendant GHL Mechanical, Inc. is an Ohio corporation engaged primarily in the business of contracting to perform electrical construction, installation, and repair work. (Doc. 1, ¶11). According to a declaration submitted by the trustees, GHL is currently bound to a collective bargaining agreement between the International Brotherhood of Electrical Workers Local Union No. 38 and the Greater Cleveland Chapter of the National Electrical Contractors Association. (Doc. 11-3, ¶3-4, hereinafter "Dietz Declaration 1"). In support of this submission, the trustees have provided a letter of assent, signed by GHL's president G. Hank Lucrezi on 15 March 2004, indicating GHL's intent to be bound by the collective bargaining agreement. (Doc. 11-4).

3

In general terms, the collective bargaining agreement is meant to regulate the relationship between workers belonging to Local 38 and an employer, such as GHL, which has assented to the agreement's terms.  (Doc. 11-5, hereinafter "CBA").  Under the agreement, an assenting employer must, among other things, provide monetary contributions to the various benefit funds, in accordance with certain terms and conditions.  (CBA, p. 38).  Employers are obligated to report on and make fringe benefit contributions to the funds, in relation to the total number of hours worked by each employee in Local 38's jurisdiction.  (CBA, p. 38).  An employer who fails to pay into the funds in timely fashion must pay as liquidated damages a delinquency assessment of 10% of the total amount due plus 1.5% of the total amount due per calender month thereafter.  (CBA, pp. 38-39).  A delinquent employer is also obligated to pay "all court costs, attorney's fees and other expenses incurred in the collection of the contributions due" from the employer.  (CBA, p. 40).

GHL apparently made payments to the funds in accordance with the CBA for a time, but from July 2008 to November 2008, it submitted contribution reports but failed to remit any payment.  (Dietz Declaration 1, ¶8).  GHL thereafter resumed payment of fringe benefit contributions, some of which were untimely and against which delinquency assessments were made.  (Dietz Declaration 1, ¶9).  In January 2009, GHL remained delinquent for contributions for July 2008 to November 2009, and the fund trustees filed suit seeking all owed contribution payments, interest, delinquency assessments, and reasonable attorney's fees and costs.  (Doc. 1).  After the suit was filed, GHL paid off all previously owed fringe benefit contributions incurred during the period from July 2008 to November 2008.   (Dietz Declaration 1, ¶10).  However, according to a declaration filed

4

by the trustees, delinquency assessments for February 2008, July 2008 through February 2009, and April 2009 remain outstanding. (Dietz Declaration, ¶11). GHL has disputed none of the above cited facts.

The plaintiffs have moved for summary judgment, maintaining that there is no genuine issue of material fact as to GHL's obligation to pay $3,053.74 in delinquency assessments, reasonable attorneys fees and costs, and post-judgment interest. (Doc. 11). GHL has not responded to the plaintiffs' motion, but, pursuant to the Court's 2 December 2009 order, both parties have submitted briefs on whether the outstanding delinquency assessments are recoverable under federal common law.[2] (Docs. 14, 15).

**II. Standard of Review**

. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[2] When the trustees originally brought this suit, GHL had not paid the fringe benefit contributions that were owed at the time. (See Doc. 1; Doc. 11-1, p.7). At some point after this suit was initiated, GHL made its fringe benefit contributions, but the delinquency assessments were left outstanding. As the Court explained in an order dated 2 December 2009, because no contributions remained "unpaid" at the time the trustees filed for summary judgment, the delinquency assessments were no longer recoverable under ERISA. (See Doc. 13). Rather, the trustees' means of recovery became limited to principles of federal common law. (See Id.). Because neither the trustees nor GHL had briefed the Court on whether such recovery was proper, it was ordered that they do so. (See Id.) The parties subsequently filed simultaneous arguments on the issue (Docket Nos. 14, 15).

>with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of

6

evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

This burden to respond is really an opportunity to assist the court in understanding the facts. But if the nonmoving party fails to discharge that burden by remaining silent, as is the case here, its opportunity is waived and its case wagered. Where the non-moving party does not oppose the motion for summary judgment, the burden on the moving party is no different. Guarino v. Brookfield Twp. Trustees, 980 F.2d 399, 410 (6th Cir. 1992)(citing Carver v. Bunch, 946 F.2d 451 (6th Cir.1991)). The trial court is still bound to "review carefully those portions of the submitted evidence designated by the moving party." Id. However, the court should not "sua sponte comb the record from the partisan perspective of an advocate for the non-moving party." Id. Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a

7

conclusion that certain evidence and inferences from evidence demonstrate facts which are "uncontroverted." Id.

If such evidence supports a conclusion that there is no genuine issue of material fact, the trial court should determine that the moving party has carried its burden, and "judgment [ ] shall be rendered forthwith." Fed.R.Civ.P. 56(c).

**III. Law and Argument**

    **A. GHL's Liability for Delinquency Assessments**

The plaintiffs maintain that GHL is liable for delinquency assessments in the amount of $3,053.74. (Doc. 11-1, pp. 6-7; Doc. 11-3, p. 3). While the plaintiffs originally sought recovery of this amount under Section 502(g) of ERISA, they must now rely on federal common law for recovery of the outstanding assessments. See In Re Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc., 933 F.2d 376, 389-90 (6th Cir. 1991).[3] Plaintiffs' recovery under this theory depends upon whether the "liquidated damages provisions in the [CBA] constitute a penalty under federal common law." Id. at 390. This involves a two step inquiry. See United Order of Am. Bricklayers and Stone Mason Unions No. 21 v. Thorleif Larsen & Son, Inc., 519 F.2d 331, 332 (7th Cir. 1995). First, the harm caused by the breach must be very difficult or impossible to estimate. Id. Second, the amount fixed must bear a reasonable forecast of just

---

[3] The Sixth Circuit Court of Appeals has stated that delinquent contributions, such as those involved here, which were paid before judgment, do not qualify as "unpaid contributions" under the 29 U.S.C. § 1132(g)(2)(C)(ii). In Re Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc., 933 F.2d 376, 389-90 (6th Cir. 1991). Liquidated damages are only recoverable under 29 U.S.C. § 1132(g)(2)(C)(ii), when contributions remain unpaid at the time of judgment. Id.

8

compensation for the harm caused. Id. The parties' intentions determine whether the second requirement is satisfied. Id. They must make a good faith attempt to set an amount equivalent to the damages they anticipate. Id. at 333.

On the first element, the trustees point out that an employer's failure to make timely contributions results in additional administrative and collection efforts, requiring the funds to spend time contacting delinquent employers and communicating with legal counsel. (Doc. 15, pp. 2-3; Doc. 15-1, ¶4, hereinafter "Dietz Declaration 2"). In addition, employees who participate in the funds may lose health benefits, and, as a result, there are significant unascertainable administrative cost associated with notifying employees about loss of coverage, withdrawing coverage, allowing employees to self pay for coverage, and re-enrolling employees. (Dietz Declaration 2, ¶5). The funds argue that all of these collection and administrative efforts are "so intertwined with on-going operations that their separate value is most difficult to measure." (Doc. 15, pp. 2-3 (quoting Bricklayers Pension Trust Fund v., Rosati, Inc., 23 Fed. Appx 360, 361 (6th Cir. 2001)). Lastly, untimely contributions result in loss of investment income, and the trustees maintain that this value is difficult to ascertain as the market fluctuates. (Dietz Declaration 2, ¶7).

The trustees have shown that the harm caused by GHL's breach is very difficult or impossible to estimate. GHL's sole argument that "nothing in the papers filed by the plaintiff demonstrates that either prong of the test has been met" (Doc. 14) is insufficient to raise a genuine issue of material fact that would preclude summary judgment on this point. The administrative efforts involved in attempting to collect delinquent contributions, the problems associated with loss of employee health coverage, and the

difficulty in separating their cost from on-going operations place an uncertain economic burden on the funds. Therefore, the trustees have satisfied the first element.

Next, as to the second element, the trustees maintain that liquidated damages of 10% plus 1.5% per month for each month that GHL was delinquent is a reasonable forecast of just compensation for the harm caused. (Doc. 15, pp. 3-4; Dietz Declaration 2, ¶8). The trustees claim that it was not the intent of the funds to penalize employers; rather, the liquidated damages provision is a good faith attempt to fairly compensate the funds in the event that payments are untimely. (Dietz Declaration 2, ¶8). Like courts faced with similar provisions, this Court finds that this is a reasonable forecast of just compensation for the harm caused. See United Order of Am. Bricklayers and Stone Masons Union No. 21 v. Thorleif Larsen & son, Inc., 519 F.2d 331, 337 (7th Cir. 1975); Bds. Of Trustees Of the Ohio Laborers' Fringe Benefit Programs v. Bihn Excavating, Inc. U.S. Dist. LEXIS 11965 (S.D. Ohio 2005). The Court concludes that there is no genuine issue of material fact as to whether the liquidated damages provision in the collective bargaining agreement constitutes a penalty under federal common law, and the plaintiffs are entitled to judgment as a matter of law.

### B. GHL's Liability for Attorneys Fees and Costs

The trustees claim a right to reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1332(g)(1). Section 1332(g)(1) provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party . . . ." 29 U.S.C. §

1332(g)(1). A plaintiff is entitled the benefits of this statute "even though the results obtained were not due to a court order directing defendant to provide the benefits." Petro v. Flintkote Co., 633 F. Supp. 10, 11 (N.D. Ohio 1986)(citing Othen v. Ann Arbor Sch. Bd., 699 F.2d 309, 313 (6th Cir.1983)). That is, even where a party recovers through settlement after suit is filed, she or he may take advantage of Section 1332(g)(1) when seeking attorney's fees and costs. See id.

The trustees originally brought this action under ERISA. Therefore, although its recovery will not have resulted entirely through order of the court, they are entitled to costs and attorney's fees under Section 1332(g)(1). As there is no issue of material fact on this point, the plaintiffs are entitled to judgment as a matter of law. The Court, in its discretion, concludes that an award of reasonable attorney's fees and costs is proper in this case.

### IV. Conclusion

GHL's motions for leave to file a response and for leave to file an answer are denied. The trustees' motion for summary judgment is granted. GHL is ordered to pay delinquency assessments totaling $3,053.74, reasonable attorney's fees and costs, and post-judgment interest pursuant to 28 U.S.C. § 1961. The Court retains jurisdiction to enforce this award.

IT IS SO ORDERED.

   /s/ Lesley Wells
UNITED STATES DISTRICT JUDGE

Date: 24 February 2010